## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PURE BRAZILIAN USA LLC,<br><br>                Plaintiff,<br><br>v.<br><br>CHRISTINE MEDRICK and<br>YVETTE FELIX-TSABOUKOS,<br><br>                Defendants. | Civil Action No.: 1:2023-cv-10946 |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
### MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................. ERROR! BOOKMARK NOT DEFINED.

II.    FACTUAL & LEGAL BACKGROUND .......................................................... 1

   A.  The Parties ................................................................................................... 1

   B.  The Asset Purchase Agreement, Non-Compete Agreement, and Resulting
       Relationship Between the Parties ................................................................ 2

   C.  Medrick and Felix-Tsaboukos's Tortious Conduct ................................... 3

III.   STANDARD OF REVIEW ..................................................................................... 4

IV.   ARGUMENT .......................................................................................................... 5

   A.  PB is Likely to Succeed on the Merits of its Claims.................................. 5

      1.  Breach of the APA and NCA against Medrick ................................... 5

      2.  Tortious Interference against Medrick ............................................... 6

   B.  PB Will Suffer Irreparable Harm in the Absence of an Injunction ............ 7

   C.  The Balance of Equities and the Public Interest Favor an Injunction........ 8

V.    CONCLUSION ....................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

Cases

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015) .................................................................................. 7

*Beirne Wealth Consulting Servs., LLC v. Englebert*,
  2020 WL 506639 (S.D.N.Y. Jan. 30, 2020) ........................................................... 5

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
  547 F.3d 115 (2d Cir. 2008) .................................................................................. 7

*Di Biase v. SPX Corp.*,
  872 F.3d 224 (4th Cir. 2017) ................................................................................. 4

*Fid. Brokerage Servs., LLC v. Bank of China*,
  192 F. Supp. 2d 173 (S.D.N.Y. 2002) .................................................................. 10

*Mercer Health & Benefits LLC v. DiGregorio*,
  307 F. Supp. 3d 326 (S.D.N.Y. 2018) ................................................................... 9

*Really Good Stuff, LLC v. BAP Invs., L.C.*,
  813 F. App'x 39 (2d Cir. 2020) ............................................................................. 8

*Secured Worldwide LLC v. Kinney*,
  2015 WL 1514738 (S.D.N.Y. Apr. 1, 2015) .......................................................... 8

*Shenzhen Miracle Laptop Bags Co. v. Castillo*,
  2023 WL 1070464 (E.D.N.Y. Jan. 27, 2023) ......................................................... 7

*Solus Alternative Asset Mgmt. LP v. GSO Cap. Partners L.P.*,
  2018 WL 620490 (S.D.N.Y. Jan. 29, 2018) ........................................................... 8

*Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*,
  2022 WL 17811475 (E.D.N.Y. Dec. 18, 2022) ...................................................... 8

*Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*,
  2020 WL 2539117 (S.D.N.Y. May 19, 2020) ........................................................ 9

*William Penn Life Ins. Co. of New York v. Viscuso*,
  569 F. Supp. 2d 355 (S.D.N.Y. 2008) .............................................................. 9, 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................................ 4, 9

*WPIX, Inc. v. ivi, Inc.*,
  691 F.3d 275 (2d Cir. 2012) ............................................................................................... 8

Statutes

28 U.S.C. § 1335 ................................................................................................................. 10

Rules

Fed. R. Civ. P. 65 ................................................................................................................... 1

## I.     PRELIMINARY STATEMENT

Pursuant to FED. R. CIV. P. 65, Plaintiff Pure Brazilian USA LLC ("PB" or "Plaintiff") respectfully submits this Memorandum of Law and requests an order granting a temporary restraining order and a preliminary injunction against Defendant Christine Medrick ("Medrick") as to counts I-II and IV of the Second Amended Complaint [ECF 21]. Unless and until she is stopped by this Court, Medrick continues to flagrantly breach the Asset Purchase Agreement ("APA") (including the the Non-Compete Agreement ("NCA") contained therein), entered into with PB on or about July 20, 2023. Via the APA, PB purchased substantially all of the assets of CC Beauty Collection, Inc. ("CCbeauty") which, at the time, was wholly owned by Medrick.

However, following the execution of the APA and NCA, Medrick began a troubling pattern of contacting third parties and PB's distributors in order to bully, threaten, and otherwise intimidate and harass them, all with the malicious intention of preventing them from conducting their lawful and authorized sales of PB's products in California. Furthermore, Medrick has breached and continues to breach the APA and the NCA by reselling PB's products without permission. As set forth herein, Medrick's breaches of the APA and NCA have caused substantial and irreparable harm to PB by, among other things, damaging PB's relationships with its authorized resellers, costing PB sales and profits it would have otherwise realized, and tarnishing the significant reputation and good will PB has engendered with its customers. Accordingly, this Court should grant PB's motion for injunctive relief.

## II.     FACTUAL BACKGROUND

### A.     The Parties

PB is a New York limited liability company with its principal place of business located at 15 Holt Drive, Stony Point, New York 10980. Declaration of Joseph Indig ("Indig Declaration") ¶ 4. PB is a manufacturer and seller of high-quality beauty and haircare products which sells its products nationwide under brand names including "Pure Brazilian" and "Always Blonde," utilizing a wide

network of distributors to sell its products. *Id*. ¶ 5. PB is highly respected among its distributor network. *Id*.

Upon information and belief, Medrick is a citizen of Arizona and resides at 14455 N. Adero Canyon Drive, Fountain Hills, Arizona. 85268. *Id*. ¶ 6. CCbeauty formerly manufactured and sold beauty and haircare under the brand names "Pure Brazilian" and "Always Blonde," until those trademarks were purchased by PB. *Id*. ¶ 8.

### B. The Asset Purchase Agreement, Non-Compete Agreement, and Resulting Relationship Between the Parties

On or about July 20, 2023, PB and Medrick entered into the APA for the purchase of substantially all assets of CCbeauty which, at the time, was owned by Medrick. *Id*. ¶ 7. Under the APA, PB agreed to pay Two Million Dollars ($2,000,000) plus an Inventory Payment in full consideration therefor. *Id*. ¶ 9. On the same day, PB and Medrick executed a Secured Non-Negotiable Promissory Note (the "Promissory Note"), which provided that a portion of the consideration for the APA was to be paid out in installments. *Id*. ¶ 13. To date, PB has timely paid every installment due to Medrick under the Promissory Note. *Id*. ¶ 14.

Under the NCA, executed as part of the APA, Medrick covenanted not to compete with the business of PB. *Id*. ¶ 10. Specifically, Medrick agreed that:

> at no time . . . shall [Medrick] . . . advise, direct or suggest in any manner to a third party . . . that such third party (a) stop having or reduce such existing relationship with [PB], (b) not start having such a relationship with [PB], (c) during the Non-compete Period, start or increase such a relationship with any business for the Products engaged in the Industry Segment in the United States other than [PB], or (d) otherwise disparage [PB] or any person or entity affiliated with [PB]

*Id*. ¶ 11.

Following the execution of the APA and NCA and enabled by its purchase of substantially all of CCbeauty's assets, PB sought to grow its business in California, one of the U.S.'s largest markets. *Id.* ¶ 15. PB invested significant time and money in a number of areas to achieve this end,

including by hiring a head of sales, a product educator, and at least two sales staff members, and by establishing and growing a distributor network in California. *Id.* As a result of these efforts, PB developed a strong business relationship with Sevak Orujyan, a representative of Daily Beauty Needs LLC d/b/a Beauty Sign ("DBN"), a product distributor in California. *Id.* ¶ 16. DBN and PB entered into an agreement appointing DBN as PB's exclusive distributor in southern California, and DBN subsequently placed product orders with PB in accordance with that agreement. *Id.* ¶ 17.

Following the APA and NCA, for a short period, Medrick acted as an authorized distributor of PB's products, although this was not pursuant to any written agreement. *Id.* ¶ 18. Indeed, Medrick's role as a distributor of PB's products was non-exclusive and non-binding. *Id.* ¶ 19. However, shortly after Medrick began distributing PB's products, the relationship broke down, entirely as a result of Medrick's conduct. *Id.* PB requires its distributors to provide PB with a list of all customers to which the distributor had sold PB's products to, and Medrick refused to provide any such list. *Id.* ¶ 20. In addition, Medrick began selling PB's products above its retail price, and she repeatedly refused to adjust her pricing of PB's products to reflect PB's occasional discounts. *Id.* ¶ 21. In short, Medrick unilaterally decided to act as a reseller of PB's products and not as a distributor, *Id.* ¶ 22, without authorization or permission from PB. Due to Medrick's conduct, PB terminated her as an authorized distributor of PB's products on or about November 15, 2023. *Id.*

### C.    Medrick's Tortious Conduct

After PB terminated Medrick's authorization to distribute PB's products, Medrick began a campaign of bullying and harassment against PB's distributors in a clear attempt to prevent PB's lawful and authorized distributors from doing business with PB. For example, Medrick sent several harassing messages to PB's authorized distributor DBN, threatening DBN with legal action despite DBN's distribution being lawful and with the authorization and permission of PB. *Id.* ¶¶ 26-27. Medrick made these threats intentionally, with malice to harm PB, and despite knowledge that she

(a) had no standing, cause, or justification to do so and (b) had no rights in PB's brand, products, or the exclusive sale of the same. *Id.* ¶ 28.

Moreover, PB came to learn that Medrick was obtaining PB products from Yvette Felix-Tsaboukos ("Felix-Tsaboukos") for resale to customers, with whom Medrick had a close relationship. *Id*. ¶ 31. A longtime customer of PB then informed it that Medrick and Felix-Tsaboukos were misrepresenting to PB's customers that PB's products are no longer available in California, which is not true. *Id*. ¶ 30. On or about December 15, 2023, PB was contacted by another of its customers who informed PB that Medrick had held herself out as an authorized distributor of PB and was attempting to fulfill this customers' order of PB's products. *Id.* ¶ 28. Neither Medrick nor Felix-Tsaboukos were authorized to sell PB's products, nor were they authorized to make such statements. *Id*. ¶ 31. PB is not yet aware of the full scope of Medrick's false statements, nor has it discovered and tabulated just how many of PB's customers Medrick has already misled, but PB believes Medrick has made similar false statements to numerous other of PB's customers and is continuing to do so. *Id*. ¶ 32.

## III.    STANDARD OF REVIEW

A temporary restraining order ("TRO") and a preliminary injunction are warranted where the moving party can show (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor of the party seeking the injunctive relief, and; (4) that the injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Though preliminary injunctive relief "is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit[,]" such relief may also act to "restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it." *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017) (internal citations omitted).

## IV.    ARGUMENT

As discussed above, Medrick's breaches of the APA and NCA, and the tortious interference with PB's business by Medrick and Felix-Tsaboukos, have caused and continues to cause irreparable harm to PB. For the reasons set forth herein, PB's motion should be granted.

### A.    PB Is Likely to Succeed on the Merits of Its Claims

PB is likely to succeed on the merits of its claims for breach of the APA and NCA, as against Medrick, and on its claim for tortious interference against both Medrick and Felix-Tsaboukos.

### 1.    Breach of the APA and NCA against Medrick

Medrick has breached, and she continues to breach, the APA and the NCA. In order to succeed on a clam for breach of contract, a plaintiff must plead and prove "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Beirne Wealth Consulting Servs., LLC v. Englebert*, No. 19 Civ. 7936 (ER), 2020 WL 506639, at *5 (S.D.N.Y. Jan. 30, 2020).

First, PB has alleged the existence of the APA and the NCA, which are each valid and binding agreements between PB and Medrick. And PB has fulfilled its obligations under the APA and NCA by fulfilling its obligation to make payments to Medrick. To date, PB has timely remitted all payments to Medrick as required by the corresponding Promissory Note. Indig Decl. ¶ 14.

Despite PB's performance under both agreements, Medrick has demonstrably breached her obligations under the same. The APA expressly incorporates the NCA, which, in turn, explicitly states, in relevant part, that Medrick shall not

> advise, direct or suggest in any manner to a third party . . . that such third party (a) stop having or reduce such existing relationship with [PB], (b) not start having such a relationship with [PB], (c) during the Non-compete Period, start or increase such a relationship with any business for the Products engaged in the Industry Segment in the United States other than [PB], or (d) otherwise disparage [PB] or any person or entity affiliated with [PB].

*Id*. ¶ 11.

Medrick breached subsections (a) and (d) by falsely stating to PB's customers that PB's products are not available in California, thereby preventing them from either starting or continuing their business with PB. *Id*. ¶ 16. Medrick further breached subsection (a) by threatening PB's lawful and authorized distributors with unwarranted and baseless legal action should they continue to do business with PB, a prime example of which is Medrick's communications with DBN. *Id*. ¶¶ 28-30.

The NCA further provides that Medrick shall not:

> (i) have an equity or creditor interest in, or (ii) act as an employee, consultant, advisor, officer of manager (in each case, howsoever, denominated) of, any entity which engages in business activity insofar as it relates to the Industry Segment by manufacturing, promoting or making sales of products . . . in the Industry Segment[.]

Indig Decl. ¶ 11. However, Medrick breached this provision at least by purchasing PB's products from an unauthorized reseller, Felix-Tsaboukos, and offering them for sale. *Id*. ¶¶ 28-31. Medrick is therefore in clear breach of the NCA and corresponding APA, and she will continue to be in breach of the same absent an injunction.

Finally, PB has been damaged as a result of Medrick's breaches. As a result of Medrick's knowing threats and misrepresentations to PB's customers, PB's reputation and goodwill with them has been irreparably damaged. *Id*. ¶ 32. Further, Medrick's unauthorized sale of PB's products has cost PB potential sales that it would have otherwise realized. *Id*. ¶ 33.

Therefore, PB is likely to succeed on its claims for breach of contract, and injunctive relief is warranted.

### 2.   Tortious Interference against Medrick

To prevail on a claim for tortious interference with prospective economic advantage under New York law, "a plaintiff must show that '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful

purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).

Here, PB has demonstrated a likelihood of success on the merits of its claim for tortious interference with prospective economic advantage against Medrick. First and foremost, PB had developed a beneficial business relationship with DBN as PB's exclusive distributor in southern California. Indig Decl. ¶ 17. That relationship had initially generated a $10,000 order from DBN. *Id*. ¶ 26. But Medrick's baseless threats of legal action against DBN for its partnership with PB has harmed that relationship. *Id*. Indeed, Medrick used wrongful and oppressive means; namely, by making demonstrably false statements. Medrick had a similarly wrongful purpose; to bully and coerce DBN into cancelling its $10,000 order with PB. At the time Medrick made these material and false statements to DBN, she knew she had no rights in PB's products or brands, and that she did not hold any rights or ownership in PB or the marks "Pure Brazilian" and "Always Blonde." *Id*. ¶¶ 23, 27. Due to Medrick's material and false statements to DBN, DBN cancelled the $10,000 product order with PB, causing PB to lose out on not only those profits, but also all future profits that may have arisen from that lucrative relationship. *Id*. ¶ 26. PB has therefore demonstrated a likelihood of success on the merits of its claim for tortious interference with prospective economic advantage.

Absent an injunction, Medrick will continue to tortiously interfere with PB's business relationships and will likely cause other lucrative partners of PB to cancel orders and refrain from doing business with PB.

### B.    PB Will Suffer Irreparable Harm in the Absence of an Injunction

"Irreparable harm exists when 'the plaintiff's legal interests . . . could not be remedied after a final adjudication,' such as when 'the loss is difficult to replace or measure . . . .'" *Shenzhen Miracle Laptop Bags Co. v. Castillo*, No. 22-CV-7734 (HG), 2023 WL 1070464, at *3 (E.D.N.Y. Jan. 27,

2023) (quoting *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012)). Indeed, irreparable harm must be "actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Solus Alternative Asset Mgmt. LP v. GSO Cap. Partners L.P.*, No. 18 CV 232-LTS-BCM, 2018 WL 620490, at *5 (S.D.N.Y. Jan. 29, 2018). This is just such a case.

The harm to PB is actual and imminent. Medrick has already proven she is capable of destroying PB's relationships with its clients, as evidenced by her successful campaign to drive DBN away from PB and thereby cause PB to lose substantial revenue. Further, the harm at hand cannot be remedied if the court waits until the end of trial to resolve PB's claims. PB has other relationships, particularly with distributors and third-party partners, that Medrick will surely pursue in the time it takes this case to reach and conclude trial. And even if Medrick tries and ultimately fails to drive other third parties away from doing business with PB, PB's reputation and good will with those entities will surely be harmed in the process, and it is well-established that "loss of reputation and goodwill constitutes irreparable harm." *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-CV-06943 (HG), 2022 WL 17811475, at *3 (E.D.N.Y. Dec. 18, 2022) (citing *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020)). Indeed, this reputational damage is difficult — potentially impossible — to repair because even in the event PB eventually succeeds on its claims at trial, partners and distributors may refuse to return to PB due to Defendants' actions.

Accordingly, PB has established that it will suffer irreparable harm in the absence of an injunction and, as such, PB's motion should be granted.

### C.     The Balance of Equities and the Public Interest Favor an Injunction

In addition to PB's strong showing of both a likelihood of success on the merits of its claims and irreparable harm, the balance of equities weighs decidedly in favor of PB. "When confronted with a motion for a preliminary injunction, the court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Secured Worldwide LLC v. Kinney*, No. 15 CIV. 1761 CM, 2015 WL 1514738, at *21 (S.D.N.Y.

8

Apr. 1, 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Here, the equities favor PB.

If the requested relief is granted, Medrick will be prohibited from making further false statements to PB's partners, distributors, and other third-parties with which PB does business, and she will be prohibited from engaging in the unauthorized sale of PB's goods. Medrick has no right to engage in such conduct, and therefore Medrick will suffer no injury should an injunction be granted. By contrast though, without an injunction, PB will be harmed because Medrick will continue to harm PB's reputation and good will, will continue to contact PB's business relations with false and injurious statements, and will continue to unlawfully sell PB's products without authorization. Therefore, there are no potential injuries to Medrick if an injunction is granted, which does not nearly counterbalance the substantial harm PB will surely face without one.

For similar reasons, injunctive relief is in the public interest. "The public has an interest in strict enforcement of contract provisions." *Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*, No. 20-CV-2537-LTS-KNF, 2020 WL 2539117, at *7 (S.D.N.Y. May 19, 2020), *aff'd*, 828 F. App'x 74 (2d Cir. 2020). Thus, to hold Medrick to the obligations she agreed to under the APA and NCA would serve the public interest. Indeed, "[i]f anything, the public interest would be advanced by such an injunction, because, on the facts here, such an injunction would tend to encourage parties to abide by their agreements." *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 351 (S.D.N.Y. 2018) (citation omitted).

**D.     The Court Should Allow PB to Deposit the Funds At Issue with the Court Pending Resolution of this Action**

"The federal interpleader statute grants district courts original jurisdiction over actions of interpleader or in the nature of interpleader where a plaintiff stakeholder has in its possession money or property worth $500 or more that is or may be the subject of adverse claims by two or more claimants of diverse citizenship." *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp.

2d 355, 359 (S.D.N.Y. 2008) (citing 28 U.S.C. § 1335). To determine the propriety of an interpleader action, "a court must assess whether the stakeholder legitimately fears multiple liability directed against a single fund, regardless of the merits of the competing claims." *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (cleaned up). Deposit of the funds at issue with the Court "has been construed as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit." *Viscuso*, 569 F. Supp. 2d at 360.

Here, deposit of the funds at issue is appropriate. Medrick claims entitlement to the payments under the Promissory Note per the APA. However, PB's claims (as discussed herein) arise, in part, under the APA and the corresponding NCA, and PB has brought suit for damages resulting from Medrick's breaches of the same. PB's claims, therefore, are likely to either offset the amounts owed to Medrick, or may eclipse them entirely. In addition, PB believes it may be relieved from its obligation to make the payments as long as Medrick stands in material breach of the APA and NCA, which she undoubtedly is.

Because PB's claims arise under the APA, NCA, and Promissory Note, they are adverse to and conflict with Medrick's claim to the remaining balance due to her. As such, unless  and until the instant action is resolved, and for the purpose of avoiding duplicative liability or contradictory judicial determinations as to PB and Medrick's  legal rights, it is respectfully submitted that the Court should order the remaining payments due to Medrick by PB to be deposited with the Court for the duration of the instant litigation.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's request for a temporary restraining order and preliminary injunction.

Date: January 31, 2024                     Respectfully submitted,

                                           /s/ Andrew D. Bochner
                                           Andrew D. Bochner, Esq.
                                           Jeremy Doberman, Esq.
                                           Bochner PLLC
                                           1040 Avenue of the Americas, 15th Floor
                                           New York, New York 10018
                                           (646) 971-0685
                                           andrew@bochner.law

                                           *Attorneys for Plaintiff*