

Nafiz Cekirge
212.660.1045
ncekirge@rshc-law.com

1

February 9, 2024

**VIA ECF**

Honorable Robyn F. Tarnofsky
United States District Court for the
  Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 703
New York, New York 10007

Re: <u>Pure Brazilian USA LLC v. Medrick, et al.</u>, Case No.: 1:23-cv-10946 (S.D.N.Y.)

Dear Judge Tarnofsky:

This firm represents Defendant Christine Medrick in the above-referenced action. This letter responds to Plaintiff Pure Brazilian USA LLC's Renewed Request for Emergency Conference (the "Letter-Motion"). (ECF No. 24.) As Medrick has not yet appeared in the action and retained our firm yesterday, we apologize for not responding earlier.

This action arises out of a business transaction gone bad. On or about July 20, 2023, Pure Brazilian purchased a business co-owned by Medrick that manufactured and sold Brazilian hair smoothing products under the brand names "Pure Brazilian" and "Always Blonde." (ECF No. 25 ¶¶ 11-12.) In connection with the transaction, the parties entered into several agreements, including the Asset Purchase Agreement (the "APA"), the Secured Non-Negotiable Promissory Note (the "Note"), and the Non-Compete Agreement (the "Non-Compete").

The total purchase price for the transaction was $2 million plus an Inventory Payment. (APA §§ 2.1, 2.2(d); Second Am. Compl. ¶¶ 15-17.) Medrick's share of the purchase price was $1.2 million, with $750,000 due at closing and $450,000 paid in installments over a three-year period pursuant to the Note. (APA §§ 2.2(b)(i), 2.2(c)(i), Schedule 1.) The total Inventory Payment at closing was about $197,000. Medrick's share of the Inventory Payment was about $98,000, due by December 31, 2023. (APA §§ 2.2(d).) Although, Pure Brazilian timely paid Medrick's business partner his share of the Inventory Payment, it has yet to pay Medrick anything.[2] At closing, the parties also entered into a distribution agreement permitting Medrick to continue sell certain of Pure Brazilian's products.

---

[1] We do not attach the agreements for confidentiality concerns. If the Court so orders, we can produce the agreements.

[2] Because the Inventory Payment is secured by certain intellectual property, including certain trademarks, Medrick reserves her right to enforce its security interest. (APA §§ 2.2(e).) Pure Brazilian currently owes Medrick about $99,500.

Hon. Robyn F. Tarnofsky
February 9, 2024
Page 2

On or about December 18, 2023, Pure Brazilian sued Medrick, alleging, among other things, that Medrick breached the Non-Compete. (ECN No. 1; Letter -Motion 1.)  Pure Brazilian also sought to enjoin Medrick from: (1) purchasing, selling, or otherwise exchanging Plaintiff's products; (2) contacting or otherwise communicating with any of Plaintiff's distributors, servicers, and partners; (3) holding herself out as an owner, distributor, or any other affiliate of Pure Brazilian, its brand, or its products, and (4) making any statements regarding the quality, availability, or legality of Plaintiff's products. (ECF No. 28 at 1.)  Pure Brazilian further asked the Court for permission to pay its obligations to Medrick under the Note to the Court during the pendency of the action pursuant to 28 U.S.C. § 1335 (statutory interpleader) and Federal Rule of Civil Procedure 22 (rule interpleader).[3]  (ECF No. 28 at 2.)

Because Pure Brazilian focuses on its interpleader claims in the Letter Motion, we will respond to that first.  Pure Brazilian cannot rely on statutory interpleader (28 U.S.C. § 1335) to avoid its payment obligation to Medrick under the Note.  In relevant part, the statute permits a party (*i.e.*, the interpleader plaintiff) to bring suit in federal court if it has money or property worth at least $500 in his custody or possession and "(1) [t]wo or more adverse claimants[ ] . . . are claiming to be entitled to such money or property . . . and . . . (2) the plaintiff has deposited such money or property . . . into the registry of the court."  In other words, the *sine qua non* of statutory interpleader is that "the disinterested stakeholder, seeks to forego litigation involving multiple claims to a defined amount [in its custody or possession] in which it does not claim an interest, *i.e.*, it concedes the amount is payable but once and to such of the claimants as may be determined without its involvement or participation."  *N. Am. Mktg. Corp. v. K. Gronbach & Assocs., Inc.*, 221 F.R.D. 296, 298 (D. Conn. 2002).

This is not the case here.  Pure Brazilian does not take the position that it must make loan payments under the Note but does not know whether it should pay Medrick or someone else.  To the contrary, Pure Brazilian contends that "it is not liable to make payments under the . . . Note" because its damages my "eclipse" its payment obligations or because it may be relieved of its payment obligations altogether as a result of Medrick's alleged breaches of contract.  (Letter-Motion 1, ECF No. 28-2 at 10.)  Under these circumstances, Pure Brazilian's claim that statutory interpleader allows it to make Note payments to the Court instead of Medrick is meritless.  *See K-Power Glob. Logistics, LLC v. Poof-Alex Holdings, LLC*, No. 220CV3432ESMAH, 2021 WL 1712331, at *5 (D.N.J. Apr. 30, 2021) ("Here, interpleader is improper because Plaintiffs seek not for the Court to determine the respective rights of the parties, but to declare that Plaintiffs have a superior interest over the inventory as against . . . [defendants].  Plaintiffs do not admit liability to

---

[3]  Although In its proposed Order to Show Cause, Pure Brazilian purports to avail itself of Rule 22 interpleader, (ECF No. 26 1), he waives this argument by failing to develop it in its accompanying Memorandum of Law, (ECF No. 28-2 at 9-10.)  *See Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 (S.D.N.Y. 1997) (holding that arguments not raised in the opening memorandum of law need not be considered)*, aff'd*, 159 F.3d 1347 (2d Cir. 1998).  We will nevertheless address rule interpleader below.

Hon. Robyn F. Tarnofsky
February 9, 2024
Page 3

anyone; they claim [defendants] are liable to them."").

Nor does rule interpleader help Pure Brazilian. It, like statutory interpleader, requires that at least two defendants claim rights to single *res* over which the plaintiff also asserts no rights. *See Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995). *See also Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 483 (S.D.N.Y. 2015) (holding that statutory and rule interpleader "serve the same purpose and perform the same function, and differ only in their requirements for subject matter jurisdiction, venue, and service of process").

Turning now to Pure Brazilian's request for injunctive relief, Medrick did not commit any of the malfeasance that Pure Brazilian contends justifies an injunction. That said, Medrick believes that the parties can come to an agreement on much of the relief that Pure Brazilian seeks without the need for an order of the Court. Accordingly, Medrick is open to discussing Pure Brazilian's request for injunctive relief with Pure Brazilian to try to reach a resolution.

Medrick reserves all rights, including her right to attorneys' fees under Paragraph 10.2 of the Note and under Paragraph 5 of the Intellectual Property Security Agreement to enforce its security interest for default on the Inventory Payment.

Respectfully Submitted,

*/s/ Nafiz Cekirge*
Nafiz Cekirge
*Attorneys for Defendant Christine Medrick*

4883-1916-8420, v. 3